UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

      v.                                      Crim. Action No. 2:06–cr–16–wks-2

Eric Gravel

## REPORT AND RECOMMENDATION
(Doc. 127)

      Eric Gravel, proceeding *pro se*, has moved under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (Doc. 127.) Gravel pleaded guilty to conspiracy to distribute and possess with intent to distribute heroin and cocaine, including 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846, and possessing a firearm while being an unlawful user of drugs, in violation of 18 U.S.C.§ 922(g)(3). (Doc. 51 at 1, ¶ 1; *see also* Docs. 3, 49.) In November 2007, United States District Judge William K. Sessions III sentenced Gravel to terms of 112 months' imprisonment on each count, to be served concurrently, followed by a four-year term of supervised release. (Doc. 83 at 1–3; *see also* Doc. 80.) The sentence was affirmed on direct appeal, *see United States v. Gravel*, 323 F. App'x 55 (2d Cir. 2009) (Summary Order) (Doc. 103).

      In 2014, the United States Sentencing Commission passed Amendment 782, reducing the Sentencing Guideline ranges for certain drug offenses and applying these changes retroactively, effective November 1, 2015. *See* United States Sentencing Commission, Amendment to the Sentencing Guidelines, at 1 (July 18, 2014), *available at* https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-

amendments/20140718_RF_Amendment782.pdf [hereinafter Amendment 782]. Gravel subsequently moved to be resentenced under Amendment 782. (Doc. 108.) Judge Sessions granted the Motion and reduced Gravel's sentence to 85 months, effective on November 1, 2015 to coincide with the date Amendment 782 went into effect. (Doc. 111.)

In the instant Motion, Gravel claims that because of Amendment 782's effective date, he was unable to fully benefit from the sentence reduction and by his calculation, he has served a total of 117 months' imprisonment,[1] instead of 85 months. (Doc. 127 at 4; *see also* Doc. 132 at 4.) He requests that his sentence "be vacated, set aside, and corrected." (Doc. 127 at 6.) For the reasons set forth below, I recommend that Gravel's Motion be DENIED.

## Background

The following facts are derived from the records of this Court, including the presentence report (PSR), the Plea Agreement (Doc. 51), and the Sentencing Transcript (Doc. 94), and the records of the United States District Court for the Central District of California, where Gravel has pursued parallel challenges to his sentence, *Gravel v. Fox*, No. 2:15-cv-04073-PSG-RAO (C.D. Cal. 2015). *See, e.g.*, *Wells v. United States*, 318 U.S. 257, 260 (1943) (noting that a federal district court may take judicial notice of habeas proceedings brought by the same party in other federal courts).

In 2007, Gravel pleaded guilty to one count of conspiring to distribute and possess with intent to distribute heroin and cocaine, including over 100 grams of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846, and one count of possessing a handgun as

---

[1] The parties' papers present various calculations of Gravel's term of imprisonment. As discussed below, these discrepancies are ultimately immaterial.

2

an unlawful user of drugs, in violation of 18 U.S.C. § 922(g)(3).  (Doc. 51 at 1, ¶ 1; *see also* Doc. 49; Doc. 3 at 6.)  Prior to sentencing, the United States Probation Office submitted a Presentence Report (PSR) to the Court.  The PSR found that Gravel's base offense level was 32, concluding that the offense involved "at least 1,000 kilograms but less than 3,000 kilograms of marijuana equivalent," pursuant to USSG § 2D.1.1.  (PSR at 14, ¶ 66 (citing USSG § 2D1.1(c)(4) (2006))); *see also* USSG § 2D1.1 (2006), cmt. n.10.  The PSR applied a two-level enhancement for possession of a dangerous weapon and a three-level credit for acceptance of responsibility, resulting in a total offense level of 31.  (PSR at 15.)  With Gravel's criminal history category of V (*id.* at 19, ¶ 85), the corresponding United States Sentencing Guidelines (USSG) imprisonment range was 168–210 months (*id.* at 26, ¶ 121).

At sentencing, Judge Sessions adopted the offense level calculation, but reduced Gravel's criminal history category to III, resulting in a Guidelines range of 135–168 months.  (Doc. 94 at 12, 15, 39–40.)  Judge Sessions reduced the low end of this range by 23 months, crediting Gravel with time served in Vermont state custody for conduct relevant to the federal offense.  (*Id.* at 38–40 (citing USSG § 5G1.3 (2007))); *see also* Doc. 80.)  Gravel was accordingly sentenced to terms of 112 months' imprisonment on each count, to be served concurrently, followed by a four-year term of supervised release.  (Doc. 83 at 1–3; *see also* Doc. 80.)

Several years later, the United States Sentencing Commission adopted Amendment 782, which lowered the base offense level for several drug offenses, including Gravel's, by revising the Drug Quantity Table in USSG § 2D1.1(c).  *See* Amendment 782, at 1.  The Amendment applies retroactively, but courts were instructed "not [to] order a reduced term

of imprisonment based on Amendment 782 unless the effective date of the court's order is November 1, 2015, or later." USSG § 1B1.10(e)(1) (2014); *see also id.* § 1B1.10, cmt. n.6. In February 2015, Gravel moved under 18 U.S.C. § 3582(c)(2)[2] to be resentenced because Amendment 782 reduced his base offense level by two levels. (Doc. 108.) Judge Sessions granted the Motion and reduced Gravel's sentence to 85 months, as proposed by Gravel and his attorney.[3] (Doc. 111; *see also* Doc. 108 at 12; Doc. 110 at 3, ¶ 7.) As mandated by the Sentencing Commission, the revised sentence took effect on November 1, 2015—the Amendment's effective date. (Doc. 111.) Judge Sessions's Order explicitly noted that all other provisions of the original November 2007 judgment remained in effect. (*Id.*)

A few months later, while in the custody of the Bureau of Prisons (BOP) in California, Gravel filed a habeas petition under 28 U.S.C. § 2241 in the United States District Court for the Central District of California. *Gravel v. Fox*, No. 2:15-cv-04073-PSG-RAO (C.D. Cal. 2015), ECF No. 1. Gravel argued that his sentence should be adjusted to reflect the sentence reduction granted by Judge Sessions, and that he should be released immediately since he had already served the reduced term of imprisonment.[4] *Id.* The court

---

[2] Under this statute, where a defendant's original sentence was based on a sentencing range subsequently lowered by a retroactive Guidelines amendment, the defendant's sentence may be reduced "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); *see also United States v. Erskine*, 717 F.3d 131, 135 (2d Cir. 2013) (finding the Sentencing Commission's policy statement set forth in § 1B1.10 of the Guidelines "valid and binding on district courts").

[3] The 85-month sentence was calculated from a revised base offense level of 30, pursuant to the new Drug Quantity Table (USSG § 2D1.1(c)(5)), as amended by Amendment 782. (*See* Doc. 108 at 12; Doc. 110 at 3, ¶ 7.) A base offense level of 30 corresponded to a Guidelines range of 108–135 months' imprisonment. (Doc. 110 at 3, ¶ 7.) As calculated at the original sentencing, the low end of this range was reduced by the 23 months that Gravel served in state custody for conduct relevant to the federal offense. (*Id.*); *see also* USSG § 5G1.3(b).

[4] Gravel argued that he had already served "roughly 91 months" on the 85-month term. *Gravel*, No. 2:15-cv-04073-PSG-RAO, ECF No. 1, at 6.

4

denied Gravel's petition, *id.,* ECF Nos. 17, 20, finding that "[b]oth the policy statement of Amendment 782 and the related Commentary make clear that the Sentencing Commission did not intend to effectuate any sentence reduction pursuant to Amendment 782 until November 1, 2015." *Id.*, ECF No. 17 at 6; *see also Gravel v. Fox*, Case No. CV 15-04073 PSG (RAO), 2015 WL 9694643, at *3 (C.D. Cal. Dec. 10, 2015), *report and recommendation adopted*, 2016 WL 146420 (C.D. Cal. Jan. 12, 2016). The court explained that after Judge Sessions reduced Gravel's sentence from 112 to 85 months, "the BOP recalculated Petitioner's sentence so that his release date was November 1, 2015"—the "earliest date allowed" pursuant to Amendment 782. *Gravel*, No. 2:15-cv-04073-PSG-RAO, ECF No. 17 at 6. The court concluded that even though Gravel would serve longer than 85 months by November 1, 2015, the sentence was "consistent with . . . the effective date of the District Court's . . . order," the effective date of any reduced term of imprisonment under Amendment 782, and USSG § 1B1.10(b)(2), which provides that "a term of imprisonment may not be reduced below time already served." *Id.* (citing USSG § 1B1.10(b)(2)(C), (e)(1)). Gravel did not appeal from the Central District of California ruling.

While Gravel's habeas petition was pending in the Central District of California, Gravel brought another collateral challenge to his sentence in this Court, again claiming that he was serving beyond the 85-month reduced term of incarceration. (*See* Docs. 113, 116, 117.) Because Gravel's filings were premised in part on his mistaken belief that he would not be released until October 2016, Judge Sessions issued an Order informing Gravel that he would in fact be released on November 1, 2015, and directing him to notify the Court if he

5

accordingly planned to withdraw his motions.[5]  (Doc. 119 at 2.)  The Court noted that if Gravel were to proceed, his papers would be construed as seeking habeas relief "under 28 U.S.C. § 2241, because he challenge[d] BOP's calculation of his sentence and his placement pending release," not "his underlying conviction or the imposition of his current sentence, as reduced" (*id.* at 2, 3), and the matter would be transferred to the Central District of California, where Gravel remained incarcerated, (*id.* at 4 (citing 28 U.S.C. § 1404(a))).  Gravel did not file any response to the Court's Order and the Court denied Gravel's motions as moot.  (Doc. 121.)

A review of the BOP's inmate locator system indicates that Gravel completed the custodial portion of his sentence on October 30, 2015.  *See Fed. Bureau of Prisons Inmate Locator*, Fed. Bureau of Prisons, http://www.bop.gov/inmateloc/ (last visited Aug. 18, 2017).  On November 14, 2016, Gravel filed a Motion to Modify Terms of Supervised Release under 18 U.S.C. § 3583(e)(1), claiming that because he could not fully benefit from the reduced imprisonment term due to Amendment 782's effective date and because, by his calculation, he had served 25 months longer than necessary, his term of supervised release should be "completely terminate[d]" or "reduce[d] . . . by 25 months."  (Doc. 124 at 2–3.)  The Court denied the Motion in a text order.  (Doc. 126.)

---

[5] As the BOP explained in the Central District of California proceeding, Gravel's new sentence had to account for the November 1, 2015 effective date of Amendment 782 and Judge Sessions's Order. *Gravel*, No. 2:15-cv-04073-PSG-RAO, ECF No. 15 at 4, ¶ 7. Moreover, the BOP could not reduce Gravel's sentence to a period of "less than the term . . . already served" under the Guidelines. *See id.* (quoting USSG § 1B1.10(b)(2)). Accordingly, the BOP calculated Gravel's total adjusted prison term at 107 months and 17 days. *Gravel*, 2015 WL 9694643, at *2. This adjusted sentence "set [Gravel's] full prison term date at October 16, 2016," but with 350 days of good credit time, Gravel was set to be released on November 1, 2015. *Id.* at *2, n.3. Judge Sessions later clarified that the October 2016 date "merely serve[d] as a placeholder . . . and w[ould] not impact [Gravel's] November 2015 release." (Doc. 119 at 2.)

Gravel filed the instant Motion on April 24, 2017, repeating claims that he has "over pa[i]d for [his] crimes," with respect to his reduced sentence.[6] (Doc. 127 at 6.) Gravel seeks to be "reliev[ed] . . . of any further obligation to the Government and the people"— presumably requesting that the Court vacate his supervised release term, which is the only portion of his sentence that remains. (Doc. 132 at 8; *see also id.* at 4 (Gravel noting that he has "served the . . . imprisonment portion" of his sentence but is "still serving the supervised release portion," which "gives this court jurisdiction for review and [him] grounds to file").)

## **Analysis**

Under 28 U.S.C. § 2255(a), "[a] prisoner in custody" may collaterally attack his sentence on "the ground that [it] was imposed in violation of the Constitution or laws of the United States." A movant, like Gravel, who is under supervised release is "in custody" for the purposes of § 2255. *See, e.g.*, *Byrd v. Evans*, 420 F. App'x 28, 29 (2d Cir. 2011) (Summary Order); *Scanio v. United States*, 37 F.3d 858, 860 (2d Cir. 1994). Section 2255(a) provides relief only "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Cuoco v. United States*, 208 F.3d

---

[6] Gravel offers several different, often confusing, calculations of his time served. (*See, e.g.*, Doc. 127 at 4 ("I served a grand total of roughly 117 months on a newly rendered sentence of 85 months with a full term of imprisonment of 108 months."); Doc. 132 at 4 ("By my calculations . . . the full sentence satisfaction is actually 130 months or so." (emphasis omitted)); Doc. 132-4 (calculating total time served of "116 months and 15 days not counting 2 months awarded for Good Conduct Time").) The government follows the calculation of 107 months and 17 days provided by the BOP in the Central District of California proceeding, discussed *supra* note 5. (Doc. 129 at 10 ("It appears that [Gravel] served about 107-and-a-half months, or 22-and-a-half months more than his reduced sentence of 85 months.").) These discrepancies are immaterial, however, because the exact length of Gravel's sentence does not impact the analysis that follows, and because the parties agree that Gravel served a term of incarceration of at least 22 months longer than the 85-month term. For clarity, the Court presumes that the BOP calculation of 107 and a half months' imprisonment is accurate and adopts it here.

27, 30 (2d Cir. 2000) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)).  As the movant, Gravel bears the burden of establishing any claim under § 2255 by a preponderance of the evidence.  *See Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000); *Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995).

As discussed below, Gravel's Motion fails because: 1) it is moot; 2) it is barred by the statute of limitations; and 3) it lacks merit under § 2255.

## I.     Gravel's Motion is Moot.

The Court cannot grant Gravel the relief he seeks and thus the Motion is Moot.  Gravel does not challenge the underlying conviction to which he pleaded guilty—instead, he "seek[s] to have the instant federal sentence vacated, set aside, and corrected for procedural error."  (Doc. 127 at 1.)  But Gravel has already completed his term of imprisonment, thus any challenge to this portion of his sentence is moot.

Alternatively, if Gravel's Motion is construed as a challenge to his current term of supervised release—the only portion of his sentence that remains—the Motion nevertheless fails because the Court cannot reduce Gravel's term of supervised release for two primary reasons.  First, the Supreme Court has held that if a defendant has served excess time on a term of imprisonment, as Gravel argues here, the excess portion of his prison term cannot be credited against his term of supervised release.  *United States v. Johnson*, 529 U.S. 53, 54–56, 59 (2000) ("The objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release. . . . Supervised release fulfills rehabilitative ends, distinct from those served by incarceration."); *see also United States v. Barresi*, 361 F.3d 666, 674–75 (2d Cir. 2004).

8

Second, Gravel was subject to a four-year mandatory minimum term of supervised release under 21 U.S.C. § 841(b)(1)(B) (2006). (See PSR at 27, ¶ 125.) Section 841(b)(1)(B) was explicitly referenced in the Plea Agreement. (Doc. 51 at 1, ¶ 2.) Courts in this circuit have repeatedly held that when a defendant has been released from prison, and sentenced to a statutorily mandated term of supervised release, a habeas challenge to his sentence is subsequently moot. *See, e.g.*, *Alshalabi v. United States*, No. 08 CV 2734(RJD), 2012 WL 727911, at *4 (E.D.N.Y. Mar. 6, 2012) (petitioner's "challenge to the custodial portion of his sentence was rendered moot upon his release from prison" because he had received the statutory minimum term of supervised release and thus even with a favorable ruling, "there [wa]s no possibility that [the court] could reduce the term of supervised release or otherwise 'relieve [defendant] of some concrete and identifiable collateral effect of [his] sentence'" (last alteration in original) (quoting *United States v. Hamdi*, 432 F.3d 115, 118 (2d Cir. 2005))); *Bomasuto v. Perlman*, 680 F. Supp. 2d 449, 460 (W.D.N.Y. 2010) (habeas petition moot where petitioner had completed his term of imprisonment and the sentencing court "would be unable to impose a lesser term of supervised release than that already imposed" under the applicable statute); *Gomez-Vargas v. United States*, No. 07 CIV. 1864 HB, 2009 WL 1024241, at *3 (S.D.N.Y. Apr. 15, 2009) (same); *see also United States v. Williams*, 475 F.3d 468, 479 (2d Cir. 2007) (defendant's "appeal was rendered moot upon his release from prison because there [wa]s no possibility that the district court could impose a reduced term of supervised release" on remand, because the district court was required to impose a mandatory minimum term of supervised release under 21 U.S.C. § 841(b)(1)).

Accordingly, even if offsetting Gravel's supervised release term was a proper remedy for the period of excess imprisonment, the Court could not reduce Gravel's statutorily mandated four-year term of supervised release.[7] The Motion is thus moot and should be DENIED.

## II. Gravel's Motion is Time-Barred.

Gravel's Motion also should be denied because it was not filed within the applicable limitations period. Under the Antiterrorism and Effective Death Penalty Act (AEDPA), § 2255 motions are subject to a one-year limitations period, which runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

---

[7] The Court would be similarly constrained in its ability to reduce Gravel's supervised release term in the motion for sentence reduction (18 U.S.C. § 3582(c)(2)) context, and Judge Sessions has already denied an analogous motion by Gravel. (*See* Docs. 124, 126.) As the Eastern District of Virginia explained in a nearly identical case, where the defendant filed a motion to reduce his supervised release term on the basis that Amendment 782 would not give him full relief from confinement: "Under 21 U.S.C. § 841(b)(1)(B), the statute under which Defendant was sentenced, a four-year term of supervised release is required. In other words, the Court *must* impose at least four years of supervised release in addition to a term of incarceration. Such a mandatory directive cannot be overridden by the Sentencing Commission or equitable considerations." *United States v. Featherstun*, No. 1:05cr21, 2015 WL 2137268, at *2 (E.D. Va. May 7, 2015) (citing cases) (footnote omitted); *see also United States v. Carpenter*, 396 F. App'x 743, 744 (2d Cir. 2010) ("District courts are constrained in their ability to modify a sentence under § 3582(c)(2) if the court has imposed a statutory mandatory minimum sentence."); USSG § 1B1.10, cmt. n.1(A) (reduction in a defendant's term of imprisonment is not authorized under § 3582(c)(2) if the applicable Guidelines amendment "does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision (e.g., a statutory mandatory minimum term of imprisonment)").

28 U.S.C. § 2255(f). The Court granted Gravel's Motion to reduce his sentence under Amendment 782 and resentenced him on March 12, 2015. (Docs. 108, 111.) The Order became final 14 days later, on March 26, 2015. *See Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005) (per curiam) ("[F]or purposes of § 2255 motions, an unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires."); Fed. R. App. P. 4(b)(1)(A)(i) ("In a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after . . . the entry of either the judgment or the order being appealed."). Gravel filed the instant Motion on April 27, 2017 (Doc. 127), over a year beyond the one-year limitations period of § 2255(f)(1). Subsections (f)(2) and (f)(4) have no application here.

Gravel appears to contend that his Motion is timely under § 2255(f)(3). (*See* Doc. 127 at 1.) But Gravel does not cite, nor can the Court find, a newly recognized Supreme Court rule that an inmate, who will serve beyond his reduced sentence because of Amendment 782's effective date, should be released prior to that effective date. Gravel cites extensively to *Alleyne v. United States*, 133 S. Ct. 2151 (2013), but this case was decided nearly a year before the Sentencing Commission promulgated Amendment 782 and has no bearing on the timeliness of Gravel's Motion.[8] Even if the holding in *Alleyne* was relevant to Gravel's Motion, the Second Circuit has explicitly held that this case "did not announce a new rule of law made retroactive on collateral review." *United States v. Redd*, 735 F.3d 88, 92 (2d Cir. 2013).

---

[8] In *Alleyne*, the Supreme Court held that "[a]ny fact that, by law, increases the penalty for a crime," or stated differently, any fact that would increase the mandatory minimum sentence, "is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." 133 S. Ct. at 2155.

In his Reply, Gravel also argues that his Motion is timely under 18 U.S.C. § 3583(e)(1), which allows a court to "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release." (Doc. 132 at 1.)  This argument is unavailing because Gravel does not cite to, nor can the Court find, any authority supporting the proposition that § 3583(e)(1) tolls, resets, or otherwise impacts the statute of limitations under § 2255(f).  To the extent Gravel intended to seek relief under § 3583, the Court has already denied such a Motion in this matter.  (*See* Docs. 124, 126.)

Finally, Gravel is not entitled to equitable tolling of the statute of limitations, which "applies only in the rare and exceptional circumstance[]." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (alteration in original) (internal quotation marks omitted).  In the Second Circuit, "tolling is appropriate only if [the petitioner] shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance[] stood in his way and *prevented timely filing*." *Jenkins v. Greene*, 630 F.3d 298, 302 (2d Cir. 2010) (first alteration in original) (internal quotation marks omitted).  Gravel cannot make either showing here.

Accordingly, I recommend that Gravel's Motion be DENIED as barred by the statute of limitations.

### III.  Gravel's Claims Are Meritless Under § 2255.

Even if Gravel's Motion was not moot and time-barred, his claims nevertheless fail on the merits.  Section 2255(a) allows a petitioner to seek relief on the basis "that the court was without jurisdiction to impose [the] sentence, or that the sentence was in excess of the

maximum authorized by law, or is otherwise subject to collateral attack." In the absence of jurisdictional or constitutional violations, "the Supreme Court has long held that . . . Section 2255 relief is available only when the claimed error constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice'" and where "exceptional circumstances" justify habeas relief. *Nnebe v. United States*, 534 F.3d 87, 90 (2d Cir. 2008) (quoting *Hill v. United States*, 368 U.S. 4242, 428 (1962)).

Gravel essentially challenges the impact of Amendment 782 on his sentence, perhaps in an attempt to relitigate his unsuccessful Motion to modify his term of supervised release. (*See* Docs. 124, 126.) As a preliminary matter, numerous courts have held that "[t]he application of Amendment 782" is not properly raised in a § 2255 motion, but instead must be challenged under 18 U.S.C. § 3582(c).[9] *Beamon v. United States*, Nos. 2:11–CR–26–B0–1, 2:14–CV–71–BO, 2015 WL 4208737, at *3 (E.D.N.C. July 9, 2015); *see, e.g.*, *Alaniz v. United States*, Civil Action No. 5:14–CV–169, Criminal Action No. 5:10–CR–1420–2, 2015 WL 12803705, at *8 (S.D. Tx. Jan. 25, 2015); *Hardin v. United States*, Nos. CV 115–023, CR 111–365, 2015 WL 1419173, at *3–4 (S.D. Ga. Mar. 27, 2015); *Benstrom v. United States*, No. 2:14–cv–209, Criminal Case No. 2:12–CR–36–4, 2014 WL 5105984, at *2 (W.D. Mich. Oct. 10, 2014); *see also United States v. Perez*, 08cr00429-06 (DLC), 2016 WL 4775536, at *1 (S.D.N.Y. Sept. 14, 2016) (holding that a motion under 18 U.S.C. §

---

[9] Gravel, however, cannot prevail under any other § 3582(c)(2) motions because his sentence has already been reduced under the applicable amendment. *See United States v. Caraballo-Martinez*, No. 16-11772, 2017 WL 3324688, at *5 (11th Cir. Aug. 4, 2017) ("[I]f a defendant receives a sentence modification under § 3582(c)(2), subsequent reduction based on the same amendment to the Guidelines is not available—the modified sentence is no longer based on the outdated Guidelines range.").

3582, rather than § 2255, is the proper vehicle to seek a sentence reduction under a retroactively effective Guidelines amendment).  Alternatively, Judge Sessions found that prior filings in this matter (Docs. 113, 116, 117), raising nearly identical claims, were properly classified as § 2241, rather than § 2255, motions.[10]  (*See* Doc. 119 at 2–4.)

But assuming Gravel's challenge to his sentence was properly brought in the instant Motion, Gravel fails to satisfy the standards of § 2255(a).  Gravel does not claim that the sentencing court lacked jurisdiction and he does not allege any constitutional violations, other than a fleeting request that the Court "recognize[] the . . . impact . . . of not vacating the current sentence" on his "overall rights outlined in the [Eighth] Amendment to be free from cruel and unusual punishment."  (Doc. 127 at 5.)  This vague and conclusory statement fails to demonstrate that Gravel is entitled to habeas relief.  *See, e.g.*, *United States v. Aiello*, 814 F.2d 109, 113–14 (2d Cir. 1987).

---

[10] "Under § 2241, a prisoner may challenge the '*execution* of [his] sentence,' . . . such as calculations by the [BOP] of the credit to be given for other periods of detention, or decisions to deny parole, . . . or conditions of confinement."  *Roccisano v. Menifee*, 293 F.3d 51, 57 (2d Cir. 2002) (first alteration in original) (citations omitted); *see also Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 n.5 (2d Cir. 1991) ("[C]hallenges to the *length*, appropriateness or conditions of confinement are properly brought under 28 U.S.C. § 2241." (emphasis added)).  "Section 2255, on the other hand, is the proper vehicle when the federal prisoner seeks 'to challenge the legality of the *imposition* of a sentence by a court,'" not "the manner in which it is being executed."  *Roccisano*, 293 F.3d at 51 (first quoting *Chambers v. United States*, 106 F.3d 472, 474 (2d Cir. 1997), then quoting *Corrao v. United States*, 152 F.3d 188, 191 (2d Cir. 1998)).  The Court notes that, if recharacterized under § 2241, the instant Motion may be barred as a successive petition in light of Gravel's § 2241 Petition filed in the Central District of California, which raises essentially identical claims and was denied on the merits.  *See Simon v. United States*, 359 F.3d 139, 143 n.7 (2d Cir. 2004) (Second Circuit noting that it has "implicitly held that [28 U.S.C.] § 2244(a) permits courts to dismiss § 2241 habeas petitions when they raise claims that have already been decided on the merits in a prior § 2241 petition"); 28 U.S.C. § 2244(a) ("No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus.").  The Court need not engage in this analysis here, however, because Gravel's Motion fails on several other grounds.

Gravel also cannot demonstrate that his sentence resulted in a miscarriage of justice. Gravel asserts that his "new sentence failed to consider the length of time [he] had been incarcerated," constituting "plain error" and a failure by the Court to properly calculate the applicable Guidelines range. (Doc. 127 at 4–5.) But there was no error, fundamental or otherwise. As the Central District of California already concluded, *Gravel*, 2015 WL 9694643, at *3, the fact that Gravel served longer than an 85-month sentence was simply the result of Amendment 782's effective date, mandated by statute and the Sentencing Commission. Under 18 U.S.C. § 3582(c)(2), a court may only reduce a defendant's sentence "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Such statements are "valid and binding on district courts." *United States v. Erskine*, 717 F.3d 131, 135 (2d Cir. 2013).

Accordingly, the Court was constrained by the Sentencing Commission's statement that "[t]he court shall not order a reduced term of imprisonment based on Amendment 782 unless the effective date of the court's order is November 1, 2015, or later." USSG § 1B1.10(e) (2014); *see also id.* § 1B1.10, cmt. n.6 ("Subsection (e)(1) does not preclude the court from conducting sentence reduction proceedings and entering orders . . . before November 1, 2015, provided that any order reducing the defendant's term of imprisonment has an effective date of November 1, 2015, or later."). The Court's Order (Doc. 111) also was consistent with USSG § 1B1.10(b)(2)(C), which states that "a term of imprisonment may not be reduced below time already served." Moreover, as the government notes, Gravel's sentence of approximately 107 and a half months' imprisonment cannot constitute a complete miscarriage of justice, because this sentence "was still less than the original

15

112-month term imposed by Judge Sessions" and "well below" the PSR imprisonment range.  (Doc. 129 at 10.)

In his Reply, Gravel raises a new claim that challenges the initial sentence imposed before the resentencing proceedings.  He alleges that the original sentence was based on "an offense that was not proven by the Prosecutor beyond a reasonable doubt nor admitted to in the plea agreement" and that the "court failed to adjust the Offense Level to reflect the actual drug quantity agreed to in the plea agreement."  (Doc. 127 at 6, 7.)  Though generally "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), this rule "is inapplicable to Guidelines calculations that do not result in a sentence . . . above the statutory maximum," *United States v. McLeod*, 251 F.3d 78, 82 (2d Cir. 2001), *cert. denied*, 534 U.S. 935 (2001).  *See also United States v. Norris*, 281 F.3d 357, 359 (2d Cir. 2002) (holding that "*Apprendi* does not apply to enhancements that determine a sentence that is within the applicable statutory maximum" and that "the applicable standard of proof for enhancements is preponderance of the evidence").  Here, Gravel was subject to a mandatory minimum sentence of five years (60 months) and a statutory maximum of 40 years (480 months), as a consequence of his guilty plea under 21 U.S.C. § 841(b)(1)(B).  *See id.*; (*see also* PSR at 25, ¶ 120.)  The original sentence of 112 months' imprisonment fell far below the statutory maximum penalty, and thus the sentencing court was entitled, and in fact required, to make factual findings with respect to the drug quantities involved in Gravel's conduct, by a preponderance of the evidence.  *See, e.g.*, *United States v. Garcia*, 167 F. App'x 259, 260 (2d Cir. 2006)

(Summary Order) (collecting cases); *see also United States v. Crosby*, 397 F.3d 103, 115 (2d Cir. 2005) ("[A] sentencing judge would . . . violate [18 U.S.C. §] 3553(a) by limiting consideration of the applicable Guidelines range to the facts found by the jury or admitted by the defendant, instead of considering the applicable Guidelines range, . . . based on the facts found by the court."), *abrogated on other grounds by United States v. Fagans*, 406 F.3d 138 (2d Cir. 2005).

Moreover, Gravel's argument appears to be premised on his misunderstanding of the Drug Equivalency Tables.[11] Gravel fails to recognize that these Tables "provide a means for combining different controlled substances to obtain a single offense level." USSG § 2D1.1, cmt. n.10 (2006). Where, as here, the offense conduct involves multiple types of controlled substances, the court must "convert each of the drugs to its marihuana equivalent, add the quantities, and look up the total in the Drug Quantity Table to obtain the combined offense level." *Id.* Because Gravel's offense conduct involved both heroin and cocaine, the PSR converted these substances to their marijuana equivalents, resulting in a base offense level of 32. (PSR at 14 (citing USSG § 2D1.1(c)(4)).) Accordingly, the offense level accurately corresponded to Gravel's guilty plea and there was no error in the calculation of Gravel's original sentence.

---

[11] Gravel argues that the "correct and applicable guideline range" for the crimes of conviction was 70–87 months, calculated from an offense level of 25 and a criminal history category of III. (Doc. 132 at 7); *see also* USSG Ch. 5, Pt. A (2006) (Sentencing Table). Taking into account the two-level enhancement for possession of a dangerous weapon, and three-level credit for acceptance of responsibility (PSR at 14–15), Gravel seems to believe that his base offense level should have been calculated at 26 in the Drug Quantity Table, USSG § 2D1.1(c)(7) (2006). Level 26 corresponds to offense conduct involving at least 100 grams, but less than 400 grams of heroin, *or* at least 500 grams, but less than 2 kilograms of cocaine, among alternative substances and quantities. (*Id.*) But Gravel pleaded guilty to conduct involving *both* 100 grams or more of heroin, and 500 grams or more of cocaine, and thus the controlled substances had to be combined, using their marijuana equivalents. (Doc. 51 at 1, ¶ 1; *see also* Docs. 3; 49.)

For these reasons, Gravel's claims are meritless under § 2255 and I recommend that his Motion be DISMISSED.[12]

## IV.  No Hearing is Required.

A court ruling on a § 2255 motion must hold a hearing, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).  To merit a § 2255 hearing, a petitioner's "application must contain assertions of fact that [the] petitioner is in a position to establish by competent evidence." *Aiello*, 814 F.2d at 113 (citing *Machibroda v. United States*, 368 U.S. 487, 514 (1962); *Dalli v. United States*, 491 F.2d 758, 761 (2d Cir. 1974)).  An evidentiary hearing is not warranted here because Gravel's Motion and the record plainly demonstrate that he is not entitled to relief under § 2255, as explained above.

## **Conclusion**

For the foregoing reasons, I recommend that Gravel's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, and Correct a Sentence (Doc. 127) be DENIED without a hearing.

---

[12] The government also argues that Gravel's claims are procedurally defaulted because he has foregone at least two opportunities to raise them on direct appeal.  (Doc. 129 at 7–8.)  A claim not raised on direct appeal is procedurally defaulted in the § 2255 proceeding unless the petitioner can establish cause for the default and resulting prejudice, "or that he is 'actually innocent' of the crime of which he was convicted." *DeJesus v. United States*, 161 F.3d 99, 102 (2d Cir. 1998) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998); *Murray v. Carrier*, 477 U.S. 478, 485, 496 (1986)).  The government asserts that Gravel failed to move for reconsideration of, or appeal, both Judge Sessions's March 2015 resentencing Order (Doc. 111), and the Central District of California's order dismissing Gravel's § 2241 habeas petition, *Gravel*, 2015 WL 9694643.  But the Court notes that Judge Sessions's Order, adopting Gravel's proposed sentence reduction, was not adverse to Gravel.  And with respect to the Central District of California matter, it is unclear if a petitioner's failure to appeal in one jurisdiction bears on his procedural default in another, and the government has not cited to any authority for this proposition.  On the other hand, Gravel did not appeal Judge Sessions's Order (Doc. 126) denying Gravel's Motion to reduce his term of supervised release by the excess time he served when resentenced (Doc. 124).  Regardless, the Court need not reach the issue here because the instant Motion fails on several other grounds, discussed above.

A certificate of appealability in a § 2255 proceeding may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The movant has not made this showing unless "reasonable jurists could debate whether . . . the [motion] should have been resolved in a different manner, or that the issues presented [a]re adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations and citation omitted). Gravel does not satisfy this standard. Accordingly, I further recommend that a certificate of appealability be DENIED.

Dated at Burlington, in the District of Vermont, this 30th day of August, 2017.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).